UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
KEVIN P. MCKENNA,

                         Plaintiff,                      CV 06-2895 (SJF) (ETB)

   -against-                                      MEMORANDUM
                                                        OPINION AND ORDER

THE INCORPORATED VILLAGE OF NORTHPORT,
THE NORTHPORT VILLAGE POLICE DEPARTMENT,
CHRISTOPHER J. HUGHES, and ALAN M. BAKKER,

                        Defendants.
------------------------------------------------------------------x

Before the court are the following motions by the plaintiff, Kevin P. McKenna ("plaintiff" or "McKenna"): (1) a motion to amend the complaint to add Sergeant William Ricca ("Ricca") as an additional defendant and to amend the date on which the plaintiff served a Notice of Claim on the Village of Northport (the "Village"); and (2) a motion to compel the defendants to produce the personnel files and any records of complaints filed against the individual defendants, Christopher J. Hughes ("Hughes"), Alan M. Bakker ("Bakker") and Ricca (collectively referred to as "defendant police officers"). Oral argument was held with respect to these motions on June 28, 2007, before the undersigned. For the following reasons, the plaintiff's motions to amend and compel are granted.

## FACTS

On November 5, 2005, at approximately 1:15 a.m., the plaintiff, Kevin P. McKenna, was operating his automobile on Fort Salonga Road in the Village of Northport when he was directed to pull over by defendant police officers Alan Bakker and Christopher Hughes, for allegedly

speeding and failing to "maintain lane." (Compl. ¶¶ 10, 11.)[1] Bakker approached plaintiff's vehicle and instructed plaintiff to exit the vehicle, which plaintiff did. (Id., ¶ 12.) Bakker then joined Hughes at the rear of plaintiff's vehicle and instructed plaintiff to join them. (Id., ¶ 13.) Plaintiff complied and was instructed to walk a straight line on the side of his vehicle, which he successfully did. (Id.) Bakker then attempted to place plaintiff under arrest for DWI. (Id.)

Plaintiff asserts that when he questioned why he was being arrested, defendants Bakker and Hughes "launched a vicious physical assault upon him," striking him with a flashlight several times in the head, tackling him and placing him in handcuffs while he was lying on the ground, kicking him and slamming his head into the pavement repeatedly. (Id., ¶ 14.) Plaintiff further asserts that one of the officers sprayed him in the face with mace, whereupon the two officers picked him up and "heaved him violently" into the rear compartment of their patrol car. (Id.)

The officers then drove plaintiff to Huntington Hospital, where he was admitted for treatment for injuries sustained during his arrest. (Id., ¶ 15.) However, plaintiff refused medical treatment other than allowing a doctor to inspect his facial bruises. (Id.)

Plaintiff was then transported by defendants Bakker and Hughes to the Northport Police Station where plaintiff was asked to take a breathalyzer test.[2] (Id., ¶ 16.) Plaintiff asserts in his complaint that at approximately 12:00 p.m. on November 6, 2005, emergency medical

---

[1] The allegations discussed in the "Facts" section herein are the same in both the Complaint and Proposed First Amended Complaint.

[2] Subsequent allegations in the complaint indicate that plaintiff refused to take the breathalyzer test.

technicians were called to the Northport Police Station because plaintiff's medical condition was worsening. (Id.) Technicians allegedly responded and provided plaintiff with medical aid. (Id.)

The defendant police officers thereafter charged plaintiff with seven traffic citations as well as two misdemeanor informations and one felony complaint. (Id., ¶ 17.) The felony complaint charged plaintiff with theft of one of the defendant police officer's flashlights, allegedly used by the officer to strike the plaintiff in the head, and the misdemeanor informations charged plaintiff with driving under the influence of alcohol and resisting arrest. (Id.) The seven traffic citations charged plaintiff with: (1) crossing the double yellow line; (2) refusing a pre-screen test; (3) speeding; (4) failure to maintain lane (three counts) and (5) driving while intoxicated (based on plaintiff's "refusal to test"). (Id.)

Plaintiff was arraigned before Northport Village Justice Ralph Crafa on November 6, 2005, who temporarily suspended plaintiff's driver's license pending the adjudication of the charges and released plaintiff on $3,600 bail that day. (Id., ¶ 18.) On November 7, 2005, plaintiff appeared before Northport Village Justice Paul Senzer who dismissed the citation for refusing a pre-screen test. (Id., ¶ 19.) A hearing was held on November 14, 2005 regarding plaintiff's refusal to take a blood alcohol test. (Id., ¶ 20.) Administrative Law Judge Chester J. Weinstein ruled that there was indeed a refusal and permanently suspended plaintiff's driver's license. (Id.) The remaining charges were referred to a grand jury.[3] (Id., ¶ 19.)

---

[3] Although not stated in plaintiff's complaint, Defendant's Memorandum of Law in Opposition to Plaintiff's Motions and in Support of Defendant's Motion, states that on December 22, 2006, plaintiff was convicted by a jury of "driving while intoxicated, two counts of resisting arrest and four counts of crossing and traveling in the oncoming lane" and was thereafter sentenced to a $3,500 fine. (Def. Mem. of Law, at 3.)

On January 10, 2006, plaintiff was examined by a radiologist and a neurologist and found to have serious damage to his vertebrae, including herniation of several discs and nerve damage to his hand, which he attributes to the alleged physical abuse inflicted on him by the defendant police officers. (Id., ¶ 21.) Plaintiff alleges that he has undergone and will continue to undergo therapy for his neck, shoulders, cervical spine, hand and wrist, as well as psychiatric treatment. (Id., ¶ 22.)

Plaintiff filed his Complaint in this action on June 8, 2006, asserting seven federal and state law causes of action, including: (1) denial of federal constitutional rights under 42 U.S.C. § 1983; (2) denial of state constitutional rights; (3) false arrest; (4) assault; (5) battery; (6) intentional infliction of emotional distress; and (7) negligent supervision and hiring of employees (which is solely against the Village of Northport). Defendants served an Answer in response to plaintiff's Complaint on June 27, 2006, basically denying all of the actionable allegations in the Complaint.

## DISCUSSION

I. <u>Plaintiff's Motion to Amend the Complaint</u>

    A. <u>Amendment to Add Sergeant William Ricca as a Defendant</u>

Plaintiff moves to amend his complaint to include a third defendant police officer, Sergeant William Ricca. In support of his motion, plaintiff asserts that he did not learn of Sergeant Ricca's presence and participation in plaintiff's arrest until Sergeant Ricca was called to testify as a rebuttal witness during plaintiff's criminal trial in December 2006. (Aff. of Kevin McKenna, undated, ¶ 4.) Plaintiff further asserts that he has never seen any police report or

other document listing Sergeant Ricca by name or describing his activities in relation to plaintiff's arrest. (Id.) The defendants do not dispute this assertion.

Defendants oppose plaintiff's motion to amend on the grounds of undue delay, arguing that December 18, 2006 was not the earliest date on which plaintiff could have learned of Sergeant Ricca's involvement in his arrest. (Def. Mem. of Law, at 4-5.) Defendants further argue that allowing plaintiff to amend his complaint would be futile because plaintiff failed to timely file a Notice of Claim on the Village of Northport and accordingly, the statute of limitations has expired with respect to plaintiff's state law tort claims.[4] (Id., at 5-6.)

Federal Rule of Civil Procedure 15(a) provides, in pertinent part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FED. R. CIV. P. 15(a). This rule "reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and 'mere technicalities' should not prevent cases from being decided on the merits." Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 283 (2d Cir. 2000) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962) (internal citations omitted).

It is well settled that "the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S.

---

[4] This is also the basis for defendant's cross-motion to dismiss, which is discussed in the accompanying Report and Recommendation.

321, 330 (1971) (citing Foman, 371 U.S. at 182)). In keeping with this directive, the Second Circuit has emphasized that "'[a] motion to amend should be denied only for reasons such as undue delay, bad faith, futility of amendment, and perhaps most important, the resulting prejudice to the opposing party.'" Spier v. Ferber, No. 89-1657, 1992 U.S. Dist. LEXIS 13021, at *27 (S.D.N.Y. Sept. 1, 1992) (quoting Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987)).

"The Court . . . [may] deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the course of proceedings by, for example, introducing new issues for discovery." Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000). "'Futility' is [also] a valid reason for denying a motion to amend . . . [but] only where it is 'beyond doubt that plaintiff can prove no set of facts in support' of his amended claims." Arena v. Dep't of Soc. Servs., 216 F. Supp. 2d 146, 156 (E.D.N.Y. 2002) (quoting Pangburn v. Culbertson, 200 F.3d 65, 70-71 (2d Cir. 1999) (internal citation omitted). Where the plaintiff has submitted a proposed amended complaint, as in the instant action, the district court "may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). Rule 8(a) of the Federal Rules of Civil Procedure governs the adequacy of pleadings and the proposed amended complaint must be measured against that standard. See id.

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "'The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim . . . [A]ll the Rules require

is . . . [that] the claim . . . give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (footnote omitted).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." Swierkiewicz v. Sorema, 534 U.S. 506, 513 (2002) (setting forth the exceptions for fraud and mistake found in Rule 9(b)). It "establishes a pleading standard without regard to whether a claim will succeed on the merits." Swierkiewicz, 534 U.S. at 515. "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Thus, just as the court should not dismiss a complaint for failure to state a claim unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," Hishon v. King and Spalding, 467 U.S. 69, 73 (1984), it should only deny leave to amend under the same circumstances. See Ricciuti, 941 F.2d at 123.

Plaintiff alleges in Paragraph 26 of the Proposed First Amended Complaint that "[d]uring his [criminal] trial [in December 2006], Plaintiff learned that Defendant William Ricca claimed to have been present at the scene of his arrest and to have participated in the physical attacks upon Plaintiff which resulted in his injuries." (First Am. Compl., ¶ 26.) Such allegations are sufficient to provide "a short and plain statement of the claim" for purposes of Rule 8(a). Plaintiff goes on to allege that "[a]t no previous time had Plaintiff been aware of Sergeant Ricca's involvement in the incident" and that "Defendant Ricca appeared in court and testified against Plaintiff." (Id.) There is no claim by the defendants that Ricca's participation in the

events at issue was disclosed in their mandatory disclosures, see FED. R. CIV. P. 26(a)(1), or in any other documents or disclosures turned over to the plaintiff during the pendency of this action.

Defendants argue that plaintiff's motion to amend should be denied on the grounds of undue delay, asserting that plaintiff was alert and conscious during the entirety of his arrest and detainment and accordingly, could not have been unaware of Sergeant Ricca's presence prior to December 2006. Given the nature of the allegations in this action, this argument is insufficient to establish undue delay. Moreover, as stated above, leave to amend should only be denied due to undue delay where no satisfactory explanation for the delay has been provided or where the amendment would prejudice other parties, delay the proceedings or introduce new issues for discovery. See Grace, 228 F.3d at 53-54. Here, the plaintiff has provided a satisfactory explanation for his delay in seeking to amend the complaint to add Ricca as a defendant, stating in his amended complaint that he did not learn of Ricca's involvement in his arrest until Ricca testified against him during the course of his criminal trial. (Proposed First Am. Compl., ¶ 26.) Moreover, adding Ricca as a defendant will not delay the proceedings, prejudice the defendants or introduce additional issues for discovery since the allegations against Ricca are exactly the same as those against Hughes and Bakker, which the defendants have had formal notice of since February 2006, when the plaintiff filed a Notice of Claim pursuant to New York General Municipal Law Section 50-e.

Defendants assert that plaintiff's motion to amend should also be denied based on undue delay because "months elapsed before plaintiff took any action to add Sergeant Ricca" as a defendant after learning of his involvement in December 2006. (Def.'s Mem. of Law, 5.) While

it is true that plaintiff did not file his motion to amend the complaint until April 24, 2007, approximately four months after he learned of Sergeant Ricca's participation in his arrest, plaintiff's attorney stated at the oral argument, and a review of the docket sheet in this action confirms, that the parties participated in a settlement conference before Judge Feuerstein on January 17, 2007, which was ultimately unsuccessful. By letter to the undersigned, dated February 2, 2007, plaintiff's attorney then requested a pre-motion conference for the purposes of filing the motion to amend. The pre-motion conference was held before the undersigned on April l8, 2007, at which time plaintiff was granted leave to file a formal motion to amend his complaint. As stated above, plaintiff filed his motion to amend six days later, on April 24, 2007. Based on the foregoing, there is no undue delay on plaintiff's part with respect to seeking leave to amend.

Defendants further argue that allowing plaintiff to amend his complaint to add Ricca as a defendant would be futile because plaintiff failed to comply with the New York General Municipal Law concerning timely service of a Notice of Claim on a municipality - here, the Village - and that the statute of limitations with respect to plaintiff's state law tort claims has since expired. Thus, according to defendants, plaintiff cannot assert his state law tort claims against Ricca due to the untimely service of the Notice of Claim. However, as explained below, defendants' claim vis-a-vis Ricca would be well-founded under the original Complaint filed in this action.

    B.    <u>Amendment of Date of Mailing Notice of Claim</u>

By his motion to amend, plaintiff also seeks to amend Paragraph 24 of the complaint, which pertains to the date on which the Notice of Claim was served on the Village.

The Complaint in this action states that the Notice of Claim was served on February 6, 2006, (Compl., ¶ 26), which, as defendants are correct in asserting, would make the Notice of Claim untimely since the statute of limitations for the state law tort claims expired on February 3, 2006. The Proposed First Amended Complaint, however, alleges that the Notice of Claim was served on February 1, 2006 (Proposed First Am. Compl., ¶ 26), rendering service of the Notice of Claim timely and hence preserving the state law claims against Ricca. On a motion to amend the complaint, the court must accept as true all of the allegations in the proposed amended complaint. See, e.g., Polargrid LLC v. Videsh Sanchar Nigam Ltd., No. 04 CV 9578, 2006 U.S. Dist. LEXIS 54434, at *14 (S.D.N.Y. Aug. 7, 2006) ("[I]n considering whether to grant a motion to amend, the court must accept as true all of the factual allegations of the proposed amended complaint and draw all inferences in favor of the pleader.") (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993); Henneberry v. Sumitomo Corp. of Am., 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) ("[T]he Court will review the amended complaint through the prism of a Rule 12(b)(6) analysis and, consequently, accepts as true all of the proposed complaint's factual allegations, and draw all reasonable inferences in favor of plaintiff.") (citations omitted). Accordingly, the opposition to the amended complaint based on futility is denied.

Even if the court were to consider this issue on the merits, the same result would follow, based on the parties' submissions on this issue.[5] There is much debate between the parties, in both their motion papers and at the oral argument held on June 28, 2007, as to when the Notice

---

[5] The court has not, however, chosen to treat this aspect of the motion as one for summary judgment under Federal Rule of Civil Procedure 56. See FED. R. CIV. P. 12(c). Accordingly, this issue may be pursued at defendants' option at a later date.

of Claim was actually mailed by plaintiff.  Both parties agree that the Village received the Notice of Claim on February 6, 2006 via certified or registered mail, which is a permissible form of service under New York General Municipal Law Section 50-e.[6]  However, they disagree as to *when* the Notice of Claim was actually mailed by plaintiff.

In support of his assertion that the Notice of Claim was mailed on February 1, 2006, which would make it timely under both New York General Municipal Law Section 50-e and the statute of limitations for the state law tort claims, plaintiff offers the following as evidence: (1) a cover letter, dated February 1, 2006, addressed to the Mayor of the Village of Northport, the Honorable Peter G. Panarites, enclosing the Notice of Claim and stating that it has been served in accordance with General Municipal Law Section 50-e; (2) the United States Postal Service Certified Mail Receipt, addressed to Mayor Panarites, and reflecting that the Notice of Claim was delivered to the Mayor on February 6, 2006; (3) a "print history" from Stamps.com demonstrating that postage in the amount of $4.88 was purchased and printed on February 1, 2006, with the recipient of the package being listed as Mayor Panarites; and, lastly, (4) an

---

[6] General Municipal Law Section 50-e provides, in pertinent part:

> 3 (a) The notice [of claim] shall be served on the public corporation against which the claim is made by delivering a copy thereof personally, or by registered or certified mail, to the person designated by law as one to whom a summons in an action in the supreme court issued against such corporation may be delivered, or to an attorney regularly engaged in representing such public corporation.
>
> (b) Service by registered or certified mail shall be complete upon deposit of the notice of claim, enclosed in a postpaid properly addressed wrapper, in a post office or official depository under the exclusive care and custody of the United States post office department within the state.

affidavit by plaintiff's counsel, Sheldon Karasik, that he personally mailed the Notice of Claim on February 1, 2006. (Aff. of Sheldon Karasik in Reply to Def. Opp'n to Pl. Mot and in Opp'n to Def. Cross-Mot., dated May 15, 2007, ¶ 4, and Exs. C and D.)

The defendants offer not a single piece of evidence, other than their attorney's assertion at oral argument that the Notice of Claim could have been mailed on February 4, 2006, rendering it untimely. The one piece of evidence that may have been determinative of this issue, the envelope in which the Notice of Claim was mailed, which would bear the postmark date, is missing and has presumably been destroyed - by the defendants themselves. Defendants' counsel nonetheless argues that the only way that plaintiff could conclusively establish that the Notice of Claim was mailed on or before February 3, 2006 would be by a date stamp placed on the certified mail receipt by the post office. Counsel claims that since this stamp is absent from the mail receipt provided as evidence by plaintiff, the service is defective. According to defendants' counsel, this demonstrates that plaintiff placed the Notice of Claim in a mailbox rather than taking it to the post office, which, according to defendants, plaintiff could have done on February 4, 2006 and the Village still would have received the Notice of Claim on February 6, 2006.

Defendants fail to support this argument with any legal authority. New York General Municipal Law Section 50-e clearly states that "[s]ervice by registered or certified mail shall be complete upon deposit of the notice of claim . . . in a post office or official depository under the exclusive care and custody of the United States post office department within the state." N.Y. Gen. Mun. Law § 50-e. A mailbox is an "official depository under the exclusive care and custody of the United States post office." Therefore, defendants' claim that plaintiff cannot

demonstrate timely service based on the lack of a post office date stamp on the certified mail receipt is devoid of merit.

Based on the foregoing, the plaintiff's motion to amend the complaint to add Sergeant William Ricca as an additional defendant is granted. Plaintiff's motion to amend the complaint with respect to the date of service of the Notice of Claim is also granted. There is no undue delay in seeking the amendment. The defendants make no showing of prejudice and the interest of judicial economy warrants disposing of all claims arising from this incident in a single action.

II.     Plaintiff's Motion to Compel

Plaintiff seeks to compel the disclosure of any records of complaints of professional misconduct relating to the defendant police officers, as well as the defendant police officers' personnel files, and served document requests on defendants seeking such records. Defendants objected to the production of such records and refused to produce them. Defendants argue that such records are entitled to confidentiality under Section 50-a of the New York Civil Rights Law.

Questions of privilege in federal civil rights cases are governed by federal law. See FED. R. EVID. 501; von Bulow v. von Bulow, 811 F.2d 136 (2d Cir. 1987); King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988); Sparks v. Seltzer, No. 05-CV-1061, 2006 WL 2358157, at *5 (E.D.N.Y. Aug. 14, 2006). Federal law is also applied to state law claims if such claims arise in federal question cases. von Bulow, 811 F.2d at 141 (citing legislative history of Rule 501 from Senate Report No. 1277).

In the context of a civil rights action asserted against police officers, no federal rule prohibits discovery of police personnel documents. King, 121 F.R.D. at 187. Therefore, the interests favoring and opposing confidentiality must be balanced unless defendants can demonstrate a "substantial threshold showing" of specific harm that may accrue from the disclosure of such documents. Id.

In King v. Conde, 121 F.R.D. 180 (E.D.N.Y. 1988), the court resolved two cases, both pertaining to the issue of the discoverability of discipline records and complaints against police officers. One case involved a plaintiff who was arrested by two Suffolk County police officers and subsequently sued the County and the officers for excessive force and malicious prosecution. King, 121 F.R.D. at 186. The second case involved two plaintiffs who had an altercation with Suffolk County police officers and sued the County and the officers, claiming a cover-up by the officers of their own improper conduct and malicious prosecution. Id. In both cases, plaintiffs made discovery demands seeking "records of any complaints against the officers and of any disciplinary actions for internal investigations brought by the police department against the officers." Id.

The court in King set forth a two-prong test. First, the police have the burden of making a "substantial threshold showing" that there are specific harms likely to accrue from disclosure of the specific materials. Id. at 189. The police must specify which documents or class of documents are privileged and for what reasons. Id. The reasons for nondiscloure must be explained with particularity, such as "what interests would be harmed, how disclosure under a protective order would cause the harm, and how much harm there would be." Id. These objections must be accompanied by a declaration or affidavit, under oath and penalty of perjury,

from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration. Id (citing Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987)). If such a showing is not made, the court will decide in favor of disclosure. Id.

Second, provided that the defendants make the requisite showing of specific harm, the court must balance the interests favoring and disfavoring disclosure. Id. at 190. Factors favoring disclosure are the relevance to the plaintiff's case, importance to and strength of the plaintiff's case, and importance to the public interest. Id. at 195-96. Examples of factors disfavoring disclosure are threat to police officers' own safety, invasion of privacy, weakening of law enforcement programs, any chilling effect on internal investigative candor and citizen complainant candor, and state privacy law. Id. at 191-95.

The King court held in favor of disclosure because the defendants did not make an adequate showing of harm or present any reason at all, beyond the state civil rights statute, why discovery should not be ordered. Id. at 196. The court stated that under this analysis, the personnel records were discoverable without the need for an in camera review. Id.

Two other cases, Barrett v. City of New York, 237 F.R.D. 39, 41-42 (E.D.N.Y. 2006) and Unger v. Cohen, 125 F.R.D. 67, 70 (S.D.N.Y. 1989), suggest that the relevance of the documents at issue should be determined before allowing disclosure even though the defendant has not made a substantial threshold showing of harm. In Barrett, the plaintiff alleged false arrest, illegal strip search, malicious prosecution and fabricated evidence in a civil rights action under 42 U.S.C. § 1983. Barrett, 237 F.R.D. at 40. Plaintiff moved to compel the discovery of all "unsubstantiated Civilian Complaint Review Board (CCRB), Internal Affairs Bureau, and

internal NYPD disciplinary records, regardless of the nature of the complaint." Id. The court first decided on the relevance of these documents to the plaintiff's case and then went on to analyze the issue of privilege. The relevance analysis focused on the fact that the complaints against the police officers involved events that occurred after the events at issue in the action. The court in Barrett stated that "all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be discoverable" and that investigations that post-date the filing of the current action could be relevant to "issues of pattern, intent, and absence of mistake." Id. at 41. The court held, however, that the CCRB records containing allegations wholly unrelated to those alleged in the complaint are not relevant and need not be disclosed to the plaintiff. Id. at 40. The court further held that, because defendants failed to specifically identify any potential harm that may result from the requested disclosure, the relevant and discoverable CCRB complaints would not be precluded from discovery.

Similarly, in Unger, the court stated that since the substantial threshold showing of harm was not made, it was compelled to order disclosure, unless defendants' objections on the grounds of relevance could be sustained. Unger, 125 F.R.D. at 70. The plaintiff in Unger sought the production of personnel and other records of the defendant police officers in a civil rights action pursuant to 42 U.S.C. § 1983. Id. at 68. In response, the defendants submitted the documents in question improperly, i.e., defendants submitted the documents for an in camera review without briefing or providing to the court any record of the dispute other than the brief summary contained in defendants' attorney's letter. Id. at 69. Stating that the procedure for demonstrating a substantial threshold showing of specific harm is "intended to discourage "pro forma" invocation of privilege as to documents that should be disclosed," the court held that the

threshold showing of harm was not made and therefore disclosure must be ordered unless defendants' relevance objections could be sustained. Id. at 70. The court reviewed the documents at issue and found two types of records to be relevant and subject to disclosure. First, the court stated that the personnel records containing information about, among other things, periodic performance evaluations by superiors and disciplinary actions were clearly relevant to the Section 1983 action. Id. at 70. The court similarly found the information in the civilian complaints to be relevant because they were an "obvious source of leads," even though the complaints were either abandoned or conciliated. Id. at 70-71.

In the within action, the defendants have failed to establish what, if any, specific harm will accrue if the defendant police officers' records are disclosed. Nor do they cite any justification to support non-disclosure of the records other than the state civil rights statute. Rather, defendants offer nothing more than a generalized objection under New York Civil Rights Law Section 50-a that the defendant police officers' records are "confidential" and therefore, should not be disclosed. Such generalized concerns fail to override the plaintiff's entitlement to discover relevant information necessary for the prosecution of his action. Where, as here, the defendants have failed to satisfy their burden of justifying the application of any alleged privilege, the Court "will not shield the requested documents and information from disclosure based on Section 50-a or any other privilege." Melendez v. Greiner, No. 01 Civ. 07888, 2003 U.S. Dist. LEXIS 19084, at *21 (S.D.N.Y. Oct. 22, 2003) (granting plaintiff's motion to compel records pertaining to prior complaints, grievances, and/or court actions brought against defendants as well as their personnel records, despite defendants argument that the information should be protected under New York Civil Rights Law Section 50-a).

Based on the foregoing, the plaintiff's motion to compel any records of complaints of professional misconduct against the defendant police officers, as well as the defendant police officers' personnel records, is granted. The defendants are permitted to redact any information of a personal nature included in these documents, such as social security numbers, home addresses, telephone numbers, and medical information, prior to disclosure. These records may be utilized by the plaintiff solely for purposes of this action.

## CONCLUSION

Based on the foregoing, the plaintiff's motion to amend his complaint to add Sergeant William Ricca as a defendant and to amend the date of service of the Notice of Claim on the Village of Northport is granted. The plaintiff's motion to compel the records of any prior complaints of professional misconduct against the defendant police officers, as well as the defendant police officers' personnel records, is also granted, subject to the limitations set forth above.

Plaintiff's counsel is directed to serve a copy of this report on all parties upon receipt.

SO ORDERED.

Dated: Central Islip, New York
July 13, 2007

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge